HAROLD KRIEGER, PLAINTIFF-RESPONDENT, v. CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1957—Decided January 9, 1958.

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. Benjamin H. Chodash* argued the cause for plaintiff-respondent.

*Mr. James F. McGovern, Jr.,* argued the cause for defendant-appellant (*Mr. Ezra L. Nolan,* attorney).

The opinion of the court was delivered by

CLAPP, S. J. A. D. On June 18, 1957, shortly after a commission election, the newly elected Board of Commissioners of Jersey City, in the interests allegedly of economy, adopted a resolution declaring that the services of plaintiff and Robert H. Wall, as magistrates of the Jersey City Municipal Court, were no longer required, and terminating their appointments forthwith. Plaintiff thereupon instituted this

action in lieu of prerogative writ in the Superior Court, Law Division, to set the resolution aside and for other relief, including the recovery of salary from June 18, 1957. Summary judgment was entered in his favor by Judge McGeehan, and the city appeals.

It contends first that plaintiff has no right to the office of magistrate, since his appointment, made in 1955, was effected by resolution of the governing body, and not by ordinance. According to the terms of the resolution referred to, the number of additional magistrates of the Jersey City Municipal Court was increased by one, and plaintiff was appointed to the office thus established. For the authority to provide for "additional magistrates" in this court, see *N. J. S.* 2A:8–6.

This contention raises an entirely new theory of defense injected into the case by the appellant for the first time on the appeal. Bearing in mind that plaintiff's term of office will run out before our mandate goes down, we do not feel that the point is of such public concern as to deserve consideration at this juncture in the litigation. *Cf. State ex rel. Wm. Eckelmann, Inc., v. Jones,* 4 *N. J.* 374, 379 (1950); *Morin v. Becker,* 6 *N. J.* 457, 460 (1951).

The decision below turned on the question whether the governing body of a municipality has the power to terminate the appointment of a magistrate during his term of office. The words of the resolution of June 18, 1957 are such as to leave it in doubt whether the intention thereby was to reduce the number of magisterial offices from four (there were then four magistrates of the Jersey City Municipal Court) to two, or whether the intention was merely to remove two of the magistrates from office, without reducing the number of offices. According to its provisions, the resolution *terminated* the *appointments* of two magistrates, specifying *by name* the two who were affected, and declaring that their services were no longer required. Incidentally the resolution thus singled out from the four magistrates then in office, the plaintiff who was the oldest in point of service and Robert H. Wall, Esq., the youngest in service.

A reading of the opening recitals in the preamble to the resolution might indeed lead one to assume that because of a decrease in the business of the court, the number of magisterial offices was being reduced by *one*. However, after offering this premise, the resolution then goes on to terminate the appointments of *two* magistrates.

 If the resolution was designed merely to remove two magistrates from office, without reducing the number of offices, it quite obviously cannot be sustained. We need not stop to consider whether the governing body has the power to remove a magistrate for cause during the pendency of his term. *Shockley v. Hamilton Township,* 98 *N. J. L.* 614, 616 (*Sup. Ct.* 1923); *Murphy v. Freeholders of Hudson County,* 92 *N. J. L.* 244 (*E. & A.* 1918). For, in any event, it could not remove a magistrate without affording him notice of charges and an opportunity to be heard. *Shockley v. Hamilton Township, supra,* 98 *N. J. L.* at *page* 616; *cf. Murphy v. Freeholders of Hudson County, supra,* 92 *N. J. L.* at *page* 247; *Villani v. Duffy,* 114 *N. J. L.* 60 (*Sup. Ct.* 1934); *Levinson v. Mooney,* 128 *N. J. L.* 569 (*Sup. Ct.* 1942). No such notice or opportunity was given the plaintiff here.

If however, as Jersey City contends, the resolution was designed not to remove two magistrates, but to reduce the number of additional magisterial offices by two, can it then be sustained? We may assume that this was not a mere temporary reduction in the number of these appointments, for, if so, it might perhaps be said to be in substance nothing more than a discharge of two magistrates. The question, then, to state it more particularly, is whether the city has the power to abolish the offices of such magistrates during the three-year terms for which they are appointed. We do not deal with an attempt to reduce the number of such offices upon the expiration of the respective incumbents' terms; that would present a different problem.

 There is no express legislative authority for abolishing the offices of magistrates during the course of their terms; on the contrary, *N. J. S.* 2A:8–5 declares that a municipal

magistrate *"shall serve* for a term of 3 years from the date of his appointment." We are asked however to decide that the Legislature has impliedly given the governing body this authority.

The five cases of *Shoemaker v. Township Committee of Centre Tp.,* 129 *A.* 432 *(Sup. Ct.* 1925), not officially reported, *Van Saun v. Township etc. Pequannock,* 8 *N. J. Misc.* 486 *(Sup. Ct.* 1930), *Jacoby v. Carteret,* 12 *N. J. Misc.* 199 *(Sup. Ct.* 1934), *Grippo v. Kenilworth,* 12 *N. J. Misc.* 335 *(Sup. Ct.* 1934), and *Aronsohn v. Mayor, etc. Fort Lee,* 12 *N. J. Misc.* 557 *(Sup. Ct.* 1934), furnish plenary testimony out of the reports that a hazard of the office of police judge or justice, magistrate or recorder, as it existed under the former system of local courts, was its abolition, ostensibly for reasons of economy, during the term for which he was appointed. In these cases, it may be noted, the ousted judicial officer charged, explicitly or implicitly, that in doing away with his office the governing body had been motivated, not by considerations of economy, but by political bias.

Chief Justice Vanderbilt has said that "these police judges * * * [i]n most instances, not only in New Jersey but elsewhere * * * were integral parts of the dominant political machine." *Vanderbilt, "Address before Annual Conference of Municipal Magistrates and Attorneys,"* 10 *Rutgers L. Rev.* 647, 648 (1956). To like effect, see 8 *Rutgers L. Rev.* 289, 301, 305 (1954). In 1948 when our Legislature abolished the then system of local courts, it referred to that system derogatorily as one which had been "frequently condemned." See *L.* 1948, *c.* 264, preamble. By this legislation, new municipal courts were created, their "stature" raised, and, "quite different from their predecessors," they were "held to the same high standards as all other courts." *In re Stevens,* 20 *N. J.* 177, 179 (1955). It is particularly worthy of note that at the same time it was sought, through implementary rules of administration, to invest the magistrates of the new courts with an "independence of all other branches of the municipal government,"

*In re Klaisz,* 19 *N. J.* 145, 148 (1955), and thus with an aloofness from petty political purpose.

Viewing the issue in this setting, we are convinced that the Legislature did not impliedly grant to the governing bodies of municipalities the power to abolish the office of a magistrate during his three-year term of office.

Affirmed.